IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WESTERN HEALTHCARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-565-L |
| | § | |
| NATIONAL FIRE AND MARINE | § | |
| INSURANCE COMPANY, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Healthcare Liability Solutions, Inc. filed a motion to dismiss for failure to state a claim. *See* Dkt. No. 4. Plaintiff Western Healthcare, LLC filed a motion to remand. *See* Dkt. No. 7. Defendant Raj Mehta filed a motion to dismiss for lack of personal jurisdiction or, alternatively, for failure to state a claim. *See* Dkt. No. 11. Defendant Thomas Meierant filed a Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, For Failure to State a Claim. *See* Dkt. No. 17.

United States District Judge Sam A. Lindsay referred these motions to the undersigned United States magistrate judge for findings and recommendation. *See* Dkt. Nos. 13 & 20.

The undersigned magistrate judge now issues the following findings of fact, conclusions of law, and recommendation.

**Background**

Plaintiff Western Healthcare, LLC ("Western" or "Plaintiff") brought suit in the

68th Judicial District Court of Dallas County, Texas against Defendants National Fire and Marine Insurance Company ("NFM"), Healthcare Liability Solutions, Inc. ("HLS"), The Medical Protective Company ("MedPro"), Berkshire Hathaway Inc. ("Berkshire"), Raj Mehta ("Mehta"), and Thomas Meierant ("Meierant") (collectively, "Defendants"). According to Plaintiff's Original Petition [Dkt. No. 1-3], this lawsuit involves a series of claims brought by Western, a physician staffing service, against its insurance broker, insurance companies, insurance claims handler and their employees.

According to the Original Petition, which the court takes as true for the purpose of these motions, Western retained HLS to assist it in finding appropriate malpractice insurance. HLS submitted a proposal and policy from NFM, a subsidiary of Berkshire, and represented that the policy and insurance company met Western's specific needs. Relying on HLS's recommendation, Western accepted the proposal and obtained the policy.

In October 2012, Western and one of its physicians were sued in Illinois state court. Western reported the claim as required by the policy to Raj Mehta, who was employed by Berkshire in its Reinsurance Group. The lawsuit fell within the coverage of the policy NFM provided to Western and NFM accepted tender of the defense without reservations. Mehta selected defense counsel for Western and assigned the claims handling responsibilities to MedPro, who assigned responsibility over the case to its agent, Thomas Meierant.

During discovery, the plaintiff in the Illinois lawsuit requested that Western produce a copy of its insurance policy and state the amount of insurance available to

resolve claims. Western's defense counsel requested the information from Meireant. Western was not provided a copy of the full policy. Instead, Meierant instructed Western's defense counsel to respond that the full policy limits were available to settle the claims, and they did so. Shortly after Western's discovery responses, the plaintiff voluntarily dismissed Western from the Illinois lawsuit.

During a mediation in August 2015, the Illinois plaintiff's counsel claimed that he was notified for the first time that the policy was an eroding limits policy and that the policy had substantially eroded. The Illinois plaintiff immediately filed a motion for sanctions, claiming that Western's discovery responses were knowingly false and that Western's voluntary dismissal was procured by fraud. The attorneys retained by NFM to defend Western appeared at the hearing and, without Western's knowledge or consent, agreed that Western should be brought back into the lawsuit to allow the court to adjudicate the sanctions motion against it and agreed to waive notice and accept service on Western's behalf. After doing so, NFM's chosen defense counsel claimed a conflict existed and they could no longer represent Western with respect to the sanctions issue. Western asked NFM to appoint new counsel under the NFM policy, but NFM refused. Western was then forced to retain counsel to defend itself in the Illinois lawsuit and incurred attorney's fees and expenses.

Western then brought this lawsuit in Texas state court. Western sued NFM for breach of contract and breach of the common law duty of good faith and fair dealing/bad faith refusal to defend. And Western sued all Defendants for violations of chapters 541 and 542 of the Texas Insurance Code, violations of the Texas Deceptive

Trade Practices Act, and negligence. *See* Dkt. No. 1-3.

Western alleged that NFM breached it contractual duty under the terms of the policy to defend Western in the Illinois lawsuit, including its duty to provide replacement defense counsel when the counsel NFM originally assigned refused to defend Western in the sanctions proceedings. Western alleged that NFM breached the common law duty of good faith and fair dealing and acted in bad faith when it denied Plaintiff's request for replacement counsel.

Western alleged that all Defendants violated Chapter 541 of the Texas Insurance Code by engaging in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to making, issuing, circulating, and/or causing to be made, issued or circulated one or more statements misrepresenting the terms of the policies and the benefits and advantages promised by the policies, *see* TEX. INS. CODE §§ 541.051(1)(A), (B); misrepresenting the policies by making an untrue statement of material fact, failing to state a material fact necessary to make other statements made not misleading, making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact, making a material misstatement of law, and failing to disclose a matter required by law to be disclosed, *see id.* § 541.061; misrepresenting the policies by making, publishing, disseminating, and/or circulating an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business, *see id.* § 541.052(a); engaging in unfair settlement practices by misrepresenting a material

fact or policy provision relating to the coverage at issue, *see id.* § 541.060(a)(1), failing to promptly provide a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for Defendant's denial of Plaintiff's claim, *see id.* § 651.060(a)(3), and refusing to defend Plaintiff after a claim was properly tendered. Dkt. No. 1-3 at 8-10;

Western alleged that all Defendants engaged in one or more acts that constituted violations of Chapter 542 of the Texas Insurance Code, including but not limited to knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to the coverage at issue, *see id.* § 542.003(b)(1); failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the policies, *see id.* § 542.003(b)(3); and failing to attempt in good faith to effect a prompt, fair and equitable settlement of Plaintiff's claim even though liability was reasonably clear, *see id.* § 542.003(b)(4). Dkt.No. 1-3 at 10.

Western alleged that all Defendants violated the Texas Deceptive Trade Practices Act by using false, misleading, or deceptive acts or practices in connection with the services that Western acquired, including causing confusion or misunderstanding about the source, sponsorship, approval, or certification of services, *see* TEX. BUS. & COM. CODE § 17.46(b)(2); representing that services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection he does not have, *see id.* § 17.46(b)(5); representing that an agreement confers or involves rights, remedies, or obligations that it does not or that are prohibited by law, *see id.* §

-5-

17.46(b)(12); failing to disclose information about services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed, *see id.* § 17.46(b)(24); and engaging or using unconscionable acts and practices that, to Western's detriment, took advantage of Western's lack of knowledge, ability, experience or capacity to a grossly unfair degree, *see id.* § 17.50(a)(3).

Western asserted a negligence claim against all Defendants and alleged that Defendants owed duties to Western, including but not limited to the duty to retain entities and individuals to competently administer Western's insurance program and to competently adjust Western's claims and oversee the defense of the Illinois lawsuit. Western further alleged that Defendants breached the duties they owed to Western by failing to exercise care, either directly or indirectly through the acts and omissions of those acting within the course and scope of their agency or employment, in selecting the appropriate insurance program despite knowing Western's particular insurance needs, selecting the insurer and program administrator, administering Western's insurance program, adjusting Western's insurance claims, selecting Western's defense counsel, working with Western's defense counsel to answer discovery requests, overseeing Western's defense, keeping Western apprised and obtaining Western's consent before making critical defense decisions, and providing Western and its defense counsel with all information necessary to defend itself in the Illinois lawsuit. Western also alleged that these and other acts and omissions proximately caused

Western substantial damages.

Defendants NFM, MedPro, Berkshire, and Meierant (collectively, the "Removing Defendants") removed the case to this Court on the basis of diversity jurisdiction. *See* Dkt. No. 1. The Removing Defendants contend that they did not need the consent of either HLS, the only non-diverse Defendant, whom they allege had been improperly joined to defeat federal jurisdiction, or Mehta, who had not been served at the time of removal. *See id.*

Western seeks a remand based on lack of diversity because both Plaintiff and one of the Defendants – HLS – are residents of Texas. *See* Dkt. Nos. 7, 12. The Removing Defendants contend that HLS was improperly joined for the purpose of defeating subject matter jurisdiction based on diversity and assert that Western cannot state a claim against HLS. *See* Dkt. No. 10.

HLS seeks dismissal and argues that Western has failed to state a claim against it, arguing that Western failed to state factual allegations to support its statutory claims against HLS and that its negligence claims are too conclusory. *See* Dkt. No. 4.

Mehta seeks dismissal and argues that he lacks sufficient minimum contacts with the State of Texas for the exercise of personal jurisdiction over him. Mehta also argues, in the alternative, that Western has failed to state a claim against him. *See* Dkt. No. 11.

The undersigned now concludes that the motion to remand should be granted and the Court should not reach the pending motions to dismiss because the Court does not have jurisdiction.

## Legal Standards

A defendant may remove an action filed in state court to federal court if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). And a defendant may remove a case that includes a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of 28 U.S.C. § 1331) and a claim not within the Court's original or supplemental jurisdiction or that has been made nonremovable by statute, so long as the action would be removable without the inclusion of the nonremovable claim. *See id.* § 1441(c)(1). Statutes that authorize removal are meant to be strictly construed, and any doubt as to the propriety of removal should be resolved in favor of remand. *See Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013); *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

The removing party bears the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001). A federal court's jurisdiction is limited, and federal courts generally may hear a case of this nature only if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332. "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983) (citation and internal quotation marks

omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

In diversity cases under 28 U.S.C. § 1332, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a). Failure to allege adequately the basis of diversity requires remand. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). If no amount of damages has been alleged in the state court petition, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See* 28 U.S.C. § 1446(c)(2); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995). And the Court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). "For diversity jurisdiction, the party asserting federal jurisdiction must distinctly and affirmatively allege [ ] the citizenship of the parties." *Howery*, 243 F.3d at 919.

Further, an action may not be removed on the basis of diversity jurisdiction if any defendant, properly joined and served, is a citizen of the state where the plaintiff filed suit. *See* 28 U.S.C. § 1441(b)(2). Failure to comply with this requirement renders the removal defective. *See In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009) (removal of case in violation of forum-defendant rule is defective).

Likewise, based on the so-called rule of unanimity, if an action is removed under Section 1441(a) based on diversity jurisdiction, "all defendants who have been properly joined and served must join in or consent to the removal of the action"; "[e]ach

defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal"; and, "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(A)-(C). But, if a case is removed under Section 1441(c) based on federal question jurisdiction over a claim, "only defendants against whom [a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of 28 U.S.C. § 1331)] has been asserted are required to join in or consent to the removal under" Section 1441(c)(1). *Id.* § 1441(c)(2).

A defendant alleging improper joinder has the heavy burden of "demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)); *see also Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc) (describing the "heavy burden" on the party asserting improper joinder and noting that, "until the removing party does so, the court does not have the authority to do more" and "lacks the jurisdiction to dismiss the case on its merits"). Under the second prong, the standard is whether the defendant has demonstrated that there is no reasonable basis to predict that the plaintiff might be able to recover against the in-state defendant. *See Smallwood*, 385 F.3d at 573. Ordinarily, the court must conduct a Rule 12(b)(6)-type analysis, examining the

allegations in the complaint to determine whether the plaintiff has stated a claim against the non-diverse defendants. *See Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006). If, however, the complaint has "omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* But the United States Court of Appeals for the Fifth Circuit has "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.

The Fifth Circuit recently clarified that the federal pleading standard, not a state pleading standard, applies to determine whether a nondiverse defendant has been improperly joined. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-01 (5th Cir. 2016) (abrogating three *post-Smallwood* Fifth Circuit cases applying a state pleading standard instead the federal pleading standard). The "12(b)(6)-type analysis ... is shorthand for the federal pleading standard itself ... promulgated by the Supreme Court in the *Bell v. Twombly* and *Ashcroft v. Iqbal* opinions." *Id.* at 203.

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise

-11-

a right to relief above the speculative level." *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint."

*Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008)

(directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

<u>Motion to Remand</u>

In their Notice of Removal, the Removing Defendants allege that Plaintiff Western is a citizen of Texas, NFM is a citizen of Nebraska, MedPro is a citizen of Indiana, Berkshire is a citizen of Nebraska, Mehta is a citizen of Connecticut, and Meierant is a citizen of Missouri. They also assert that the Court should disregard the citizenship of Defendant HLS because it was improperly joined solely to defeat federal jurisdiction. *See* Dkt. No. 1-3 at 5-6. There is no dispute that the amount-in-controversy requirement has been met.

"When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits. It must remand to the state court." *Smallwood*, 385 F.3d at 576.

Because Defendant HLS is a citizen of Texas, its inclusion in this action would defeat diversity unless the Removing Defendants can show that HLS was improperly joined. *See* 28 U.S.C. § 1441(b). And, because there is no dispute or allegation of actual

fraud concerning the fact that both Plaintiff and HLS are Texas residents, the sole concern in this case is whether, as a matter of law, Plaintiff has alleged a valid state-law cause of action against HLS. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

"The test 'is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.'" *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (quoting *Smallwood*, 385 F.3d at 573)). "'The focus of the inquiry must be on the joinder, not the merits of the plaintiff's case.'" *Int'l Energy Ventures Mgmt., Inc.*, 818 F.3d at 200 (quoting *Smallwood*, 385 F.3d at 573); *see also id.* at 206 (in the context of improper joinder, federal court decides only whether it has jurisdiction over the plaintiff's claims, not whether the plaintiff has any claim at all against the non-diverse defendant). In making this determination, the undersigned will "'evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff'" and "'then examine relevant state law and resolve all uncertainties in favor of the nonremoving party.'" *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 259 n.8, 264 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 206 (5th Cir. 1983)).

Western asserted claims against all Defendants, including HLS, for unfair methods of competition and unfair or deceptive acts or practices under Chapter 541 of

the Texas Insurance Code, unfair claim settlement practices under Chapter 542 of the Insurance Code, and violations of the Texas Deceptive Trade Practices Act based on allegations that Defendants made misrepresentations about the insurance policy. *See* Dkt. No. 1-3 at 8-12. The Removing Defendants contend that Western has failed to state claims against HLS under either the Texas Deceptive Trade Practices Act or the Texas Insurance Code because Western does not allege that HLS made any actionable misrepresentations or establish a causal relationship between HLS's actions and Western's damages. The Removing Defendants also argue that Western's petition fails to state a claim because it merely parrots the statutory language and lumps its claims against HLS into claims asserted against all Defendants.

According to Western's petition,

As part of its business, Western is required to provide insurance coverage for the physicians with whom it contracts to perform services at its clients' healthcare facilities. Western retained Defendant HLS to assist in meeting its insurance needs. Western provided HLS with the specific insurance requirements it needed to fulfill. Having been provided with Western's insurance requirements, HLS submitted a proposal to Western purporting to meet Western's insurance needs. Under the proposal submitted, HLS chose to place Western's insurance with Defendant NFM. In reliance upon HLS's representations as to the quality and content of the coverage HLS was proposing and the entities involved in executing its insurance program, Western accepted HLS's proposal and obtained an insurance policy from NFM.

Dkt. No. 1-3 at 3. Western also alleged that its counsel later learned that the policy was an eroding limits policy, which did not meet the specific insurance needs that Western conveyed to HLS and which HLS represented were met in insurance policy HLS proposed to Western and which, in reliance on HLS's representations, Western

purchased.

While Western does not explicitly state the misrepresentation or misrepresentations made by HLS, the Court can reasonably infer from Western's petition that HLS made representations that the policy it proposed would meet Western's specific insurance requirements and that the policy HLS proposed and Western obtained in reliance on HLS's representations did not meet those requirements. And the Court can reasonably infer from Western's petition, when viewed in its entirety, that HLS's alleged misrepresentations concern the eroding limits nature of the policy. Likewise, the Court can reasonably infer from Western's petition, when viewed in its entirety, that it is specific enough to allege a causal relationship between HLS's conduct and Western's alleged damages. According to the petition, had Western been provided a policy that met its specific insurance needs instead of the policy that was proposed by HLS, which turned out to be an eroding limits policy, Western would not have sustained damages. Additionally, even though Western has incorporated statutory language in its petition and alleged some of its claims against "all defendants," it has alleged sufficient facts to support its claims against HLS under the Texas Insurance Code and Texas Deceptive Trade Practices Act.

The Removing Defendants contend that Western has failed to state a negligence claim against HLS because Western has failed to apply the facts involving HLS to each of the elements of negligence, and specifically, that Western has failed to state facts showing that HLS's alleged breach of its duties as an insurance broker was the

proximate cause of Western's damages, that HLS's conduct was too remote to be foreseeable under Western's assertion, and that but for HLS's failure to propose an insurance policy that met its specific insurance needs, it would not have suffered damages.

Western pleaded that Defendants were negligent and breached their duties to Western by, among other things, failing to exercise care in "selecting the appropriate insurance program despite knowing Western's particular insurance needs" and "selecting the insurer and program administrator," which, according to Western's petition, when viewed in its entirety, are allegations concerning HLS. Dkt. No. 1-3 at 12.

Western was required to plead "only enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, which it did.

The undersigned concludes that the Removing Defendants have not met their heavy burden to demonstrate that HLS was improperly joined and that, because both Plaintiff Western and Defendant HLS are citizens of Texas, the Court does not have diversity jurisdiction, and the case should be remanded to the state court.

<u>Motions to Dismiss</u>

Because the Court does not have subject-matter jurisdiction on removal, the undersigned concludes that the Court should not reach the pending motions to dismiss. *See Smallwood*, 385 F.3d at 576; *see also Riley v. F.A. Richard & Associates, Inc.*, 46 F. App'x 732 (5th Cir. 2002) ("When faced with a motion to remand, a federal court must first determine whether it may properly exercise removal jurisdiction before

ruling on a motion to dismiss the plaintiff's complaint."); *KIW, Inc. v. Zurich Am. Ins. Co.*, No. Civ. A. H-05-3240, 2005 WL 3434977, at *1 n.4 (S.D. Tex. Dec. 14, 2005) (explaining that "the Court may not rule on Spring's Motion to Dismiss absent subject matter jurisdiction. The Court must first consider Plaintiff's Motion to Remand. Because the Court ultimately concludes that it lacks subject matter jurisdiction and remands this case to state court, the Court does not address Spring's Motion to Dismiss.") (citing *Heaton v. Monogram Credit Card Bank of Ga.*, 231 F.3d 994, 1000 (5th Cir. 2000)).

## Recommendation

Plaintiff Western Healthcare LLC's Motion to Remand [Dkt. No. 7] should be granted and the District Court should remand the entire action – along with all pending motions, including Defendant Healthcare Liability Solutions, Inc.'s Motion to Dismiss Under FRCP 12(b)(6) [Dkt. No. 4], Defendant Raj Mehta's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Failure to State a Claim [Dkt. No. 11], Defendant Berkshire Hathaway Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, For Failure to State a Claim [Dkt. No. 16], and Defendant Thomas Meierant's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, For Failure to State a Claim [Dkt. No. 17] – to the 68th District Court, Dallas County, Texas, from which this action was removed.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 29, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE